1
2
3
4
5
6
7

8             **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

11 LAURA HUTCHINSON,              )   Case No.: 1:15-cv-01047 - JLT
                                  )
12           Plaintiff,           )   ORDER GRANTING IN PART DEFENDANTS'
                                  )   MOTION TO DISMISS
13      v.                        )
                                  )   (Doc. 9)
14 BEAR VALLEY COMMUNITY SERVICES )
   DISTRICT and DAVID EDMONDS,    )
15                                )
             Defendants.          )
16 _____)

17         Defendants Bear Valley Community Services District and David Edmonds seek the dismissal of

18 several causes of action alleged by Plaintiff Laura Hutchinson pursuant to Rule 12(b)(6) of the Federal

19 Rules of Civil Procedure.  (Doc. 9)  Specially, Defendants seek dismissal of Plaintiff's claims for

20 violations of her First Amendment rights and failure to provide a hearing regarding her disability.  (*Id.*)

21 Plaintiff opposes the dismissal, arguing the factual allegations are sufficient to support her claims.

22 (Doc. 10)

23         The Court heard the oral arguments of the parties at a hearing.  Because Plaintiff alleges facts

24 sufficient to support her claims for First Amendment violations but fails to allege facts to support her

25 claim for a violation of due process, Defendants' motion to dismiss is **GRANTED IN PART**.

26 **I.      Background and Factual Allegations**

27         Plaintiff alleges she began working as a police officer for the Bear Valley Police Department,

28 which is operated by the Bear Valley Community Services District, in August 2007. (Doc. 7 at 2, ¶¶ 4,

                                        1

8)  Plaintiff took pregnancy leave in 2008.  (*Id.* at 3, ¶ 9)  When Plaintiff returned from leave, she was not required to undergo field training.  (*Id.*)

According to Plaintiff, after experiencing "discrimination on the job as well as retaliation," which resulted in her "filing a lawsuit under FEHA in March 2012."  (Doc. 7 at 2, ¶ 8)  Plaintiff reports the lawsuit settled in October 2012.  (*Id.* at 3, ¶ 9).

Plaintiff alleges that she "was taken off work by her physician due to a high risk pregnancy" in January 2013.  (Doc. 7 at 3, ¶ 10)  In April 2013, "Plaintiff filed a charge with the DFEH complaining about discrimination and retaliation that are made unlawful by FEHA."  (*Id.*)

In September 2013, Plaintiff returned to work.  (Doc. 7 at 3, ¶ 12)  Plaintiff alleges that upon her return, she "was forced to undergo remedial training (again) after her return from maternity leave."  (*Id.*) Plaintiff asserts she "was the most senior patrol officer, but was then told the department no longer recognized seniority."  (*Id.*)

According to Plaintiff, she was "the only female patrol officer," and the fact that the department did not recognize her seniority "adversely affected [her] by disallowing her to bid for more favorable shifts, which affected her ability to obtain reasonable child care."  (Doc. 7 at 3, ¶ 12)  She reports that Police Chief Walthers "told Plaintiff that her children do not qualify for 'hardships' which prevented Plaintiff from qualifying for a more favorable day shift."  (*Id.*) In addition, Plaintiff contends the failure to recognize her seniority adversely affected her training opportunities, vacation requests, and new patrol car assignments.  (*Id.*) Plaintiff alleges the "coveted positions were given to mail officers and Plaintiff was refused the right to even test for such positions."  (*Id.*)

Plaintiff asserts that in September 2013, she "had a discussion with Senior [O]fficer Richey about not being able to apply for promotions (detective and senior position) and she felt this was due to gender discrimination."  (Doc. 7 at 4, ¶ 13)  Plaintiff reports she then "filled out and submitted an application for an intermediate post certificate, which would provide a pay increase."  (*Id.*, ¶ 14) However, the application, which included her college transcripts, "was never sent in by Chief Walthers, which is a perfunctory step for Walthers to perform."  (*Id.*)  Plaintiff alleges Officer Richey told her that "Chief Walthers 'did not agree' with her transcripts."  (*Id.*)  According to Plaintiff, "[a]t least one male officer (Pierce) received an advance post without question by Chief Walthers."  (*Id.*)

2

Plaintiff alleges that in October 2013, she "passed remedial training and began patrolling on her own." (Doc. 7 at 4, ¶ 15)  However, "BVCSD altered shift schedules so that Plaintiff's shift involved no 'double coverage' or backup for her," though all other officers had backup. (*Id.*)  In addition, Plaintiff reports her shift was at night, rather than the day as she was previously scheduled. (*Id.*) Plaintiff maintains that if "BVCSD recognized [her] seniority, she would have been given a more favorable daytime shift with backup." (*Id.*)

She alleges that in November 2013, she again had a discussion regarding gender discrimination with Officer Richey and the assistant manager for the district, Sandy Janzen. (Doc. 7 at 4, ¶ 13) Plaintiff alleges "Janzen told [her] not to complain about the district," and reported her complaints to Walthers. (*Id.*)

According to Plaintiff, in November 2013, she "was called into the office of defendant." (Doc. 7 at 4, ¶ 16)  Sandy Janzen informed that Plaintiff she "had been recommended for termination and [instructed her to] not to ask for her annual evaluation." (*Id.*)  Plaintiff alleges Janzen told her "it would not be a good evaluation because the chief (Walthers) did not want to give Plaintiff an evaluation at all, notwithstanding the positive daily evaluations she received in relation to her remedial training." (*Id.* at 4-5, ¶ 16)

"In December 2013, Plaintiff was told by third parties that a detective's wife had told them that Chief Walthers and senior officer Richey and detective Damon Pierce were going to "get rid of Plaintiff" through psychological testing." (Doc. 7 at 5, ¶ 17)  Plaintiff reports she "sent an email to Chief Walthers to let him know that she would be looking at other departments," and began to look for another position. (*Id.*)  She asserts that after sending the email to Chief Walthers, she learned "the detective's wife had threatened to beat Plaintiff." (*Id.*)  Plaintiff alleges she then "filed a written complaint with the district for gender discrimination, retaliation, hostile work environment, and violation of her police officer Bill of Rights." (*Id.*)

Plaintiff alleges that in January 2014, she "was supposed to get Personal Time Off (PTO time) and it was withheld." (Doc. 7 at 5, ¶ 18)

In April 2014, "Plaintiff suffered an injury to her back (on the job) and reported this to her supervisor." (Doc. 7 at 5, ¶ 19)  She reports the "injury involved herniated disks in her back, which

1  causes back pain, back spasms, numbness in Plaintiff's foot, compression on Plaintiff's nerve that

2  causes sciatic pain, and weakness in her right leg." (*Id.*)  According to Plaintiff, her injury "affected

3  Plaintiff's walking and ability to perform her job and also take care of her children." (*Id.*)

4          Plaintiff alleges that in May 2014, she "was put on duty at the guard station next to the gate to

5  the community." (Doc. 7 at 6, ¶ 20)  Plaintiff asserts that her firearm was taken "and she was forced to

6  work at this station out of uniform." (*Id.*)

7          She reports that on May 29, 2014, she "was served with a notice of investigation regarding

8  alleged performance issues and allegedly falsifying documents." (Doc. 7 at 6, ¶ 21)  In addition, she

9  reports that she received a second notice of investigation in June 2014, which indicated "tenants who

10  were renting property owned by Plaintiff … [reported that she] had used her position to intimidate the

11  tenants." (*Id.*)

12          Plaintiff alleges she went to the house her tenants had been renting in June 2014, when she

13  "discovered the water had been shut off, and there was approximately $200 of water bills owing for the

14  property." (Doc. 7 at 6, ¶ 23)  Plaintiff asserts she "assumed the tenants had established their own

15  water account, but then learned that the bills were still in her name, and someone had changed the

16  address on the account." (*Id.*)  Plaintiff reports she "learned it was possible the tenants had called the

17  district and pretended to be her to have the billing address changed." (*Id.* at 6-7, ¶ 23)  She lodged a

18  complaint of identity theft with the Kern County Sheriff's Department. (*Id.* at 7, ¶ 24)  Plaintiff alleges

19  that after the Sheriff's Department contacted the tenants, the tenants "filed another complaint with

20  defendant BVCSD." (*Id.*, ¶ 25)

21          Plaintiff asserts that in June or July 2014, her therapist "took her off work" for severe work-

22  related stress and anxiety. (Doc. 7 at 7, ¶ 28)  She alleges the stress "prevented [her] from conducting

23  her work duties as well as her ability to take care of her children." (*Id.*)  On August 28, 2014, Plaintiff

24  was told "an investigation was being conducted into allegations by her former tenants." (*Id.*, ¶ 27)

25          According to Plaintiff, she "submitted paperwork to the California PERS system, requesting

26  that she be allowed to receive a disability retirement under applicable law, including Cal. Govt Code

27  21151." (Doc. 7 at 8, ¶ 29)

28          In October 2014, she "was served with a Notice Of Proposed Termination by defendant

4

Edmonds, where Edmonds was recommending that Plaintiff's employment with BVCSD be terminated." (Doc. 7 at 8, ¶ 31)  The Notice indicated her termination was based, in part, upon the complaints related to her tenants. (*Id.*)  Plaintiff reports that Edmonds "requested to meet with Plaintiff, however, Plaintiff was told by her therapist not to have any contact with the district as it was causing great stress." (*Id.*, ¶ 32)  Plaintiff alleges she submitted the notes from her therapist, but "the district violated those medical restrictions and demanded that Plaintiff meet with Edmonds." (*Id.*)  She asserts that she "was required to respond to the alleged issues … [and] prepared a written rebuttal and submitted it to the district." (*Id.*, ¶ 33)

Plaintiff reports that in January 2015, she was supposed to receive Personal Time Off, which was not given. (Doc. 7 at 8, ¶ 34)  The same month, "Plaintiff received notice that union coverage had been changed and that coverage was terminated and she no longer had a union lawyer or representative." (*Id.*, ¶ 35)  She asserts this change "would have been pursuant to a union vote and Plaintiff was excluded from any such vote." (*Id.*)  On January 29, 2015, "Plaintiff received notice of her termination from BVCSD from defendant Edmonds." (*Id.* at 9, ¶ 36)

On July 8, 2015, Plaintiff initiated this action by filing a complaint against Bear Valley Community Services District and David Edmonds. (Doc. 1)  Plaintiff alleges she "was never told whether she qualified or did not qualify for disability retirement until on or about the last week of September 2015 or the first week of October 2015." (Doc. 7 at 9, ¶ 37)

Based upon the foregoing facts, Plaintiff identifies seven claims for relief:  (1) a violation of her First Amendment rights by Edmonds; (2) violation of her First Amendment rights by the District; (3) retaliation in violation of FEHA by the District; (4) retaliation in violation of Title VII by the District; (5) gender discrimination in violation of FEHA by the District; (6) gender discrimination in violation of Title VII by the District; and (7) failure to conduct a hearing in violation of her Fourteenth Amendment due process rights, Cal. Gov't Code § 21156, and California's Administrative Procedures Act.

Defendants filed the motion now pending before the Court on November 19, 2015, seeking dismissal of the first, second, and seventh claims for relief. (Doc. 10)  Plaintiff filed her opposition to the motion on December 4, 2015 (Doc. 15), to which Defendants filed a reply on December 15, 2015 (Doc. 16).

## II.        Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). Further, allegations of a complaint must be accepted as true when the Court considers a motion to dismiss.  *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  Leave to amend should not be granted if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

## III.        Request for Judicial Notice

Defendants request that the Court take judicial notice of: 1. "the fact Bear Valley Community

Services District is a recognized Community Services District existing under the laws of the State of California as created by resolution of the Kern County Board of Supervisors on May 4, 1970, 2. the fact that "it has entered into binding Memorandum of Understanding with its rank and file police force members" and, 3. the fact that the Memorandum of Understanding provided that, as an employee, Plaintiff "had the right to request a full appeal hearing from the Board of Directors of Bear Valley Community Services District in connection with Plaintiffs termination of employment."[1]  (Doc. 10 at 3)

The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. As to the first requested fact, Defendant relies upon the official resolution of the County of Kern and the official documents of the Secretary of State.  Because this fact is capable of ready determination from sources whose accuracy cannot be questioned, the Court **GRANTS** the request as to this fact.

Defendant relies upon the "Memorandum of Understanding between [the District] and its Police Employees," attached to the request (Doc. 10 at 2) to establish the second and third facts.  Notably, there is a dispute between the parties regarding whether the Memorandum of Understanding attached to the request was in effect during the key points of Plaintiff's employment with the District.  Notably, on the face of the document and again at page 21, it purports to cover the period only July 1, 2011 through June 30, 2013.  (Doc. 10 at 5, 21)   Indeed, the final Article notes that "The Agreement shall automatically be renewed from year to year thereafter unless either party gives written notice of a desire to modify, amend, or terminate, at least ten (10) days prior to June 30, 2013 or prior to June 30 of any subsequent year, in which event this Agreement shall remain in effect during negotiations." (*Id.* at 21)   There is no evidence whether the parties did or did not modify, amend or terminate this agreement.[2]   In any event, the document *does* establish the second fact and, therefore, the Court **GRANTS** the request in this regard.

However, as to the final fact, the Court **DENIES** the request given the dispute over whether this

---

[1] The Court notes the notice states different facts of which Defendants seek judicial notice. (Doc. 10 at 2)  However, these facts are not discussed in the body of the request.  Thus, the Court addresses the facts discussed in the request.

[2] Though directed, generally, to the District's website for a current copy of the MOU, Defendants did not provide a specific URL and the Court was unable to locate a copy of the current MOU on line.

1    agreement was in effect at the time Plaintiff was terminated.

2    **IV.    Section 1983 Claims**

3         Section 1983 "is a method for vindicating federal rights elsewhere conferred."  *Albright v.*

4    *Oliver*, 510 U.S. 266, 271 (1994).  In relevant part, Section 1983 provides:

5         Every person who, under color of any statute, ordinance, regulation, custom, or usage,
         of any State or Territory... subjects, or causes to be subjected, any citizen of the United
6        States or other person within the jurisdiction thereof to the deprivation of any rights,
         privileges, or immunities secured by the Constitution and laws, shall be liable to the
7        party injured in an action at law, suit in equity, or other proper proceeding for redress...

8    42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a

9    constitutional right and (2) a person who committed the alleged violation acted under color of state law.

10   *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

11        A plaintiff must allege a specific injury was suffered, and show causal relationship between the

12   defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  A

13   person deprives another of a right "if he does an affirmative act, participates in another's affirmative

14   acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of

15   which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

16   **V.    Discussion and Analysis**

17        **A.    First and Second Causes of Action**

18        Plaintiff asserts Defendants Edmonds and the District violated her rights by unlawfully

19   retaliating against her for engaging in conduct protected by the First Amendment.  (Doc. 7 at 9-11)

20   "The First Amendment forbids government officials from retaliating against individuals for speaking

21   out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). The Supreme Court explained:

22   "[P]ublic employees do not surrender all their First Amendment rights by reason of their employment.

23   Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a

24   citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citations

25   omitted). The Ninth Circuit set forth the five-step inquiry to determine whether a public employee's

26   First Amendment rights were violated:

27        (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff
         spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech
28       was a substantial or motivating factor in the adverse employment action; (4) whether the

8

state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

At trial, a plaintiff bears the burden of showing the speech addressed a matter of public concern, and that her "constitutionally protected speech was a motivating factor in [the] adverse employment action." *Eng*, 552 F.3d at 1070 (citing *Connick v. Myers*, 461 U.S. 138 (1983); *Marable v. Nitchman*, 511 F.3d 924, 930, 932-33 (9th Cir. 2007)). If a plaintiff meets this burden, the burden shifts to the government address the remaining factors, and the government must show "adequate justification" for its actions or, in the alternative, that it "would have reached the same adverse employment decision even in the absence of the employee's protected conduct." *Eng*, 552 F.3d at 1071-72 (citation omitted).

### 1.     Liability of Edmonds

Here, Defendants do not argue that Plaintiff's speech was not a matter of public concern, but argue she "cannot establish that her alleged Protected Speech was a 'substantial or motivating factor' in Plaintiff's termination." (Doc. 9 at 16) According to Defendants, "the FAC only alleges that the purported Protected Speech was included "by Edmonds as part of his reasoning" to give Plaintiff the Notice of Termination [citation], and was a "determining factor" in Plaintiff's termination." (*Id.* at 15, quoting Doc. 7 at ¶¶ 36, 42) (*Id.*) Defendants assert, "Plaintiff cannot establish, and the FAC does not allege, that Edmonds gave greater weight to any single factor over the others alleged in determining whether to terminate Plaintiff." (*Id.* at 15-16) Therefore, Defendants conclude Edmonds did not violate a clearly established right, and he is entitled to qualified immunity.

### a.     Plaintiff's Protected Speech

As Defendants observe, Plaintiff alleges that when she received notice of her termination from Edmonds, "[i]ncluded in the reasoning for [her] termination was the Protected Speech." (Doc. 7 at 9, ¶ 36) Further, Plaintiff asserts that her "Protected Speech was a determining factor for Edmonds when he set in motion the termination of Plaintiff's job, and terminated Plaintiff's job with the BVCSD." (*Id.*, ¶ 43) For purposes of pleading a violation of First Amendment rights, these factual allegations are sufficient to support the conclusion that the Protected Speech was "*a* motivating factor" in her termination from the District, even if other factors were considered in the decision. *See Eng*, 552 F.3d

at 1070 (emphasis added); *see also Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977) (a plaintiff has the burden to show the exercise of First Amendment rights was "a motivating factor in the . . . decision"); *Alpha Energy Savers, Inc. v. Obrist*, 381 F.3d 917, 929-930 (9th Cir. 2004) ("it is not fatal to the claim of a public employee ….  that his expressive conduct may not be the only factor motivating the government officials to subject him to an adverse action").

### b.     Qualified Immunity

Qualified immunity protects government officials from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold inquiry to determine whether a defendant is entitled to qualified immunity is whether the facts alleged, taken in the light most favorable to the plaintiff, show the defendant violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If there is a constitutional violation, "the next sequential step is to ask whether the right was clearly established."  *Id.*  Finally, the right must be so "clearly established" that "a reasonable official would understand that what he is doing violates that right."  *Id.* at 202; *see also McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000) ("The test for qualified immunity is: (1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was lawful").

Here, as discussed above, Plaintiff asserts Edmonds violated her First Amendment rights.  The Ninth Circuit has determined that it has "long been the law of the land" that speech upon matters of public concern, and not pursuant to job responsibilities, is protected by the First Amendment.  *Eng*, 552 F.3d at 1075.  Thus, Plaintiff's right to make a report to the Kern County Sheriff's Department about the alleged identity theft and issues with her tenants has been clearly established.  Defendants fail to explain how Edmonds—or any officer—could reasonably believe that termination based upon her report to the Sheriff's Department was lawful.  Accordingly, Defendants' motion to dismiss the first cause of action, based on qualified immunity of Edmonds, is **DENIED**.

### 2.     Liability of the District

Municipalities or other governmental bodies may be sued as a "person" under Section 1983 for

the deprivation of federal rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  However, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability.  *Monell*, 436 U.S. at 691.  Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains. *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).  Thus, a government entity may be sued under Section 1983 when governmental policy or custom is the cause of a deprivation of federal rights. *Id.* at 694. The Ninth Circuit explained:

> A plaintiff may . . . establish municipal liability by demonstrating that (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery,* 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)).

 Here, Defendants assert Plaintiff's claim for a violation of her First Amendment rights fails because Edmond's authority to discipline and terminate District employees did not constitute a final policymaking authority.[3]  (Doc. 9 at 11)  According to Defendants, "California law provides that Edmonds could not and did not have final policymaking authority as the general manager of a community services district."  (*Id.*)  Rather, Defendants argue, community service districts such as the BVCSD "are governed by a 'legislative body of five members known as the board of directors,'" which establishes polices of the district.  (*Id.*, quoting Cal. Gov't Code § 610140)  Further, Defendants contend general managers, such as Edmonds, are "responsible for 'the implementation of the policies established by the board of directors for operation of the district…'"  (*Id.*, quoting Cal. Gov't Code § 61051) (emphasis omitted).  Therefore, Defendants argue that under California law, "it is the board of directors of a district, and not the general manager, who has final policymaking authority with respect to employee discipline."  (*Id.*)

---

[3] Defendants do not address that Plaintiff claims also that the Board ratified Edmonds' actions.

On the other hand, Plaintiff alleges that "Edmonds had final policymaking authority from the BVCSD in relation to discipline of employees." (Doc. 7 at 10, ¶ 48)  Plaintiff alleges also that "[b]y reason of Edmonds' policymaking authority, and/or the ratification of his misconduct," the District is liable for the violation of Plaintiff's First Amendment rights. (*Id.*, ¶50)  Plaintiff contends the authority to terminate Plaintiff is consistent with California law, which gives general managers of districts authority over "[t]he appointment, supervision, discipline, and dismissal of the district's employees, consistent with the employee relations system established by the board of directors." (Doc. 15 at 7, quoting Cal. Gov't Code § 61051(b)).

A public entity is liable for a constitutional violation if the action is taken by a person with final policymaking authority. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) "Whether an official has final policymaking authority is a question for the court to decide based on state law. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) ("[W]hether a particular official has 'final policymaking authority' is a question of *state law*. As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury.") (emphasis in original) (citations and internal quotation marks omitted)."

As noted above, *if* there is a pertinent MOU that restricts Edmonds' authority to fire only to those actions identified in the MOU, the Court would be hard-pressed to find that he has sufficient authority to be a final policymaker for these purposes.  However, at this time, the Court cannot make this determination.  (See Request for Judicial Notice, *infra*.)

On the other hand, the public entity may be liable if it ratifies the unconstitutional conduct by a non-policymaker. *Christie*, at 1235.  Whether ratification has occurred is a question for the jury.  *Id.* "To show ratification, a plaintiff must prove that the "authorized policymakers approve a subordinate's decision and the basis for it." *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915; see *Gillette*, 979 F.2d at 1348 (refusing to find ratification, because "[t]here is no evidence that the City manager made a deliberate choice to endorse the Fire Chief's decision and the basis for it"). Accordingly, ratification requires, among other things, knowledge of the alleged constitutional violation. *See Garrison v. Burke*,

165 F.3d 565, 572 n. 6 (7th Cir.1999) (holding that the municipality was not liable under § 1983, because it had no knowledge of the alleged constitutional violations); *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir.1998) (stating a similar proposition)." *Christie*, at 1239.  Here, Plaintiff alleges the Board ratified Edmonds' decision to terminate Plaintiff. However, she supplies no facts to support this conclusion.  If the facts demonstrate the Board, indeed, ratified Edmonds' conduct with knowledge of the constitutional violation, the Board may be held liable under *Monell*.

Because Plaintiff has not stated sufficient facts to support that the Board ratified Edmonds' firing decision, the motion is **GRANTED**  with leave to amend.

**B.     Seventh Cause of Action: Due Process, Cal. Gov't Code § 21156, and APA**

Plaintiff asserts Defendants violated her due process rights because her "right to disability retirement under California law is a vested contractual right that cannot be withheld without due process of law, including, at a minimum, the conducting of a hearing to determine disability."  (Doc. 7 at 16, ¶ 71)  Plaintiff alleges:

> Defendants have deprived Plaintiff of her due process rights under the United States Constitution and the Fourteenth Amendment thereto by failing to conduct a hearing in relation to Plaintiff's disability status. In addition, Defendants have violated state law (Govt.Code 21156 and the Cal. Administrative Procedures Act) by failing to conduct such a hearing, including a hearing before an Administrative Law judge.

(*Id.*, ¶ 73)  Further, Plaintiff maintains that Edmonds "was required… to file for disability retirement on behalf of Plaintiff once she became disabled in April 2014 (when Plaintiff was placed at the gate, out of uniform, and without her firearm), and failed to perform this duty, and then waited until after Plaintiff was terminated and claiming to PERS that Plaintiff was terminated for cause, when Plaintiff's termination occurred months after Plaintiff applied to PERS for disability retirement."  (*Id.*, ¶ 78)

Defendants argue Plaintiff is unable to state a claim because, to state a claim for a due process violation, "a plaintiff must demonstrate deprivation of a constitutionally protected right without due process law."  (Doc. 9 at 5, citing *Zineron v. Burch,* 494 U.S. 113, 125 (1990))  According to Defendants, the District is not obligated to hold a hearing regarding her disability "because she was terminated for cause, and, alternatively, she failed to appeal BVCSD's determination as to her disability status."  (*Id.*)

To state a cognizable claim for a due process violation under the Fourteenth Amendment, a

plaintiff must allege three elements: (1) a property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) a lack of required process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  Constitutional interests are created by "existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Under California law, an employer that believes an employee is disabled must apply for disability retirement on behalf of that employee, unless the employee either waives this right or applies instead for service retirement. Cal. Gov. Code §§ 21153, 21156; *Lazan v. Cty. of Riverside*, 140 Cal. App. 4th 453, 464 (2006).  The purpose of this is to prevent an employer from terminating an employee for a medical disability when he or she is eligible for disability retirement. *Haywood v. Amer. River Fire Protection Dist.*, 67 Cal. App. 4th 1292, 1305 (1998).  Prior to finding an employee is disabled, a government agency must provide notice an opportunity for a hearing, because involuntary disability retirement would result in a loss of income and deprivation of property.  *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950).

Here, it appears that Plaintiff believes Defendants should have known she was entitled to disability retirement beginning in April 2014, and applied for disability retirement on her behalf. (Doc. 7 at 17, ¶ 78)  By this time, she claims her injury involved, "involved herniated disks in her back, which causes back pain, back spasms, numbness in Plaintiff's foot, compression on Plaintiff's nerve that causes sciatic pain, and weakness in her right leg [and] [t]his affected Plaintiff's walking and ability to perform her job and also take care of her children." (Doc. 7 at 5, ¶ 18)  Plaintiff reported this injury to her supervisor. (*Id.*)  Plaintiff alleges that in May 2014, she was "placed at the gate, out of uniform, and without her firearm." (*Id.*)

Plaintiff claims Defendants should have sought a disability retirement for her pursuant to *Lazan v. County of Riverside*.  (*Id.*)  Plaintiff impliedly argues that denial of a disability retirement is a deprivation of a property interest under the Fourteenth Amendment.  Similarly, Plaintiff contends the failure to hold a hearing regarding her disability was a violation of her Fourteenth Amendment right to due process.

14

As an initial matter, there are no facts to support the conclusion that Defendants were obligated to file for disability retirement on behalf of Plaintiff in April 2014, because there are no allegations that Plaintiff was incapacitated.  Pursuant to Cal. Gov't Code § 21151, a "local safety member incapacitated for the performance of duty as the result of an industrial disability shall be retired for disability."  An officer who retains the ability to perform work—even without a firearm—and is placed on "permanent modified light duty" does not trigger the obligation to retire the officer for disability.  *Stuessel v. City of Glendale*, 141 Cal.App.3d 1047, 1053-54 (1983).  "If a person can be employed in [a permanent light duty] assignment, he should not be retired with payment of a disability retirement pension." *Id.* citing *Craver v. City of Los Angeles*, 42 Cal.App.3d 76, 80 (1974) (.)

In *Stuessel*, the court found it notable that the plaintiff's classification as a safety officer was unaffected by the modified duty assignment and he retained the same right to "salary and fringe benefits and promotional opportunities as other employees in the police officer classification." *Id*. at 1044.  Here, there are no facts alleged that Plaintiff suffered any diminution in any of these categories such to determine she was incapacitated from work and, hence, disabled.  Therefore, because Plaintiff does not allege she was unable to perform the modified work and does not allege any facts to support the claim that the Board obligation to retire her for disability was triggered, she fails to state a cognizable claim for a violation of a property interest.  Accordingly, Defendants' motion to dismiss the seventh cause of action is **GRANTED** with leave to amend.

## VI.     Conclusion and Order

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.      Defendants' motion to dismiss is **GRANTED IN PART**;

2.      Plaintiff's second and seventh cause of action are **DISMISSED** with leave to amend; and

3.      The motion as to the first cause of action is **DENIED**;

///
///
///
///

1    4.    Plaintiff **SHALL** file any amended complaint within fourteen days of the date of

2          service of this order, or the First Amended Complaint will stand with the seventh and

3          second causes of action dismissed.

4

5    IT IS SO ORDERED.

6    Dated:   __December 22, 2015__           _____/s/ **Jennifer L. Thurston**

7                                             UNITED STATES MAGISTRATE JUDGE

16