**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAURA HUTCHINSON, | Case No.: 1:15-cv-01047 - JLT |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| BEAR VALLEY COMMUNITY SERVICES DISTRICT and DAVID EDMONDS, | (Doc. 34) |
| Defendants. | |

Defendants Bear Valley Community Services District and David Edmonds seek of the first claim for relief in the Third Amended Complaint filed by Plaintiff Laura Hutchinson pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 34) Defendants assert Plaintiff is unable to state a claim for a violation of her First Amendment rights, because the police report she made was not a "protected speech." Plaintiff opposes the dismissal, arguing the factual allegations are sufficient to support her claims. (Doc. 34)

Because the police report did not raise a matter of public concern, Defendants' motion to dismiss is **GRANTED**, and the first cause of action is **DISMISSED** without leave to amend.

**I.     Allegations of the Third Amended Complaint**

Plaintiff alleges she began working as a police officer for the Bear Valley Police Department, which is operated by the Bear Valley Community Services District, in August 2007. (Doc. 30 at 2, ¶¶ 4, 8) Plaintiff took pregnancy leave in 2008. (*Id.* at 3, ¶ 9) When Plaintiff returned from leave, she

1

was not required to undergo field training.  (*Id.*)

According to Plaintiff, "she experienced discrimination on the job as well as retaliation," which resulted in her "filing a lawsuit under FEHA in March 2012." (Doc. 30 at 2, ¶ 8)  Plaintiff reports the lawsuit settled in October 2012.  (*Id.* at 3, ¶ 9).

Plaintiff alleges that she "was taken off work by her physician due to a high risk pregnancy" in January 2013.  (Doc. 30 at 3, ¶ 10)  In April 2013, "Plaintiff filed a charge with the DFEH complaining about discrimination and retaliation that are made unlawful by FEHA." (*Id.*)

In September 2013, Plaintiff returned to work.  (Doc. 30 at 3, ¶ 12)  Plaintiff alleges that upon her return, she "was forced to undergo remedial training (again) after her return from maternity leave." (*Id.*)  Plaintiff asserts she "was the most senior patrol officer, but was then told the department no longer recognized seniority." (*Id.*)

According to Plaintiff, she was "the only female patrol officer," and the fact that the department did not recognize her seniority "adversely affected [her] by disallowing her to bid for more favorable shifts, which affected her ability to obtain reasonable child care." (Doc. 30 at 3, ¶ 12)  She reports Police Chief Walthers "told Plaintiff that her children do not qualify for 'hardships' which prevented Plaintiff from qualifying for a more favorable day shift." (*Id.*)  In addition, Plaintiff contends the failure to recognize her seniority adversely affected her training opportunities, vacation requests, and new patrol car assignments.  (*Id.*)  Plaintiff alleges the "coveted positions were given to male officers and [she] was refused the right to even test for such positions." (*Id.*)

Plaintiff asserts that in September 2013, she "had a discussion with Senior [O]fficer Richey about not being able to apply for promotions (detective and senior position) and she felt this was due to gender discrimination." (Doc. 30 at 4, ¶ 13)  Plaintiff reports she then "filled out and submitted an application for an intermediate post certificate, which would provide a pay increase." (*Id.,* ¶ 14)  However, the application, which included her college transcripts, "was never sent in by Chief Walthers, which is a perfunctory step for Walthers to perform." (*Id.*)  Plaintiff alleges Officer Richey told her that "Chief Walthers 'did not agree' with her transcripts." (*Id.*)  According to Plaintiff, "[a]t least one male officer (Pierce) received an advance post without question by Chief Walthers." (*Id.*)

Plaintiff alleges that in October 2013, she "passed remedial training and began patrolling on her

2

own." (Doc. 30 at 4, ¶ 15)  However, "BVCSD altered shift schedules so that Plaintiff's shift involved no 'double coverage' or backup for her," though all other officers had backup. (*Id.*)  In addition, Plaintiff reports her shift was at night, rather than the day as she was previously scheduled. (*Id.*)  She maintains that if "BVCSD recognized [her] seniority, she would have been given a more favorable daytime shift with backup." (*Id.*)

She alleges that in November 2013, she again had a discussion regarding gender discrimination with Officer Richey and the assistant manager for the district, Sandy Janzen. (Doc. 30 at 4, ¶ 13) Plaintiff alleges that "Janzen told [her] not to complain about the district," and reported her complaints to Walthers. (*Id.*)

According to Plaintiff, in November 2013, she "was called into the office of defendant." (Doc. 30 at 4, ¶ 16) Sandy Janzen informed that Plaintiff she "had been recommended for termination and [instructed her to] not to ask for her annual evaluation." (*Id.*) Plaintiff alleges Janzen told her "it would not be a good evaluation because the chief (Walthers) did not want to give Plaintiff an evaluation at all, notwithstanding the positive daily evaluations she received in relation to her remedial training." (*Id.* at 4-5, ¶ 16)

"In December 2013, Plaintiff was told by third parties that a detective's wife had told them that Chief Walthers and senior officer Richey and detective Damon Pierce were going to 'get rid of Plaintiff' through psychological testing." (Doc. 30 at 5, ¶ 17) Plaintiff reports she "sent an email to Chief Walthers to let him know that she would be looking at other departments," and began to look for another position. (*Id.*) She asserts that after sending the email to Chief Walthers, she learned "the detective's wife had threatened to beat Plaintiff." (*Id.*) Plaintiff alleges she then "filed a written complaint with the district for gender discrimination, retaliation, hostile work environment, and violation of her police officer Bill of Rights." (*Id.*)

Plaintiff alleges that in January 2014, she "was supposed to get Personal Time Off (PTO time) and it was withheld." (Doc. 30 at 5, ¶ 18)

In April 2014, "Plaintiff suffered an injury to her back (on the job) and reported this to her supervisor." (Doc. 30 at 5, ¶ 19) She reports the "injury involved herniated disks in her back, which causes back pain, back spasms, numbness in Plaintiff's foot, compression on Plaintiff's nerve that

causes sciatic pain, and weakness in her right leg." (*Id.*) According to Plaintiff, her injury "affected Plaintiff's walking and ability to perform her job and also take care of her children." (*Id.*)

Plaintiff alleges that in May 2014, she "was put on duty at the guard station next to the gate to the community without her firearm and out of uniform." (Doc. 30 at 6, ¶ 20) Plaintiff asserts that her "change of job involved a civilian position where she would have not advancement opportunities within the police department and in fact was outside the police department where she worked." (*Id.*)

She reports that on May 29, 2014, she "was served with a notice of investigation regarding alleged performance issues and allegedly falsifying documents." (Doc. 30 at 6, ¶ 22) In addition, she reports that she received a second notice of investigation in June 2014, which indicated "tenants who were renting property owned by Plaintiff … [reported that she] had used her position to intimidate the tenants." (*Id.*, ¶ 23)

Plaintiff alleges she went to the house her tenants had been renting in June 2014, when she "discovered the water had been shut off, and there was approximately $200 of water bills owing for the property." (Doc. 30 at 6, ¶ 24) Plaintiff asserts she "assumed the tenants had established their own water account, but then learned that the bills were still in her name, and someone had changed the address on the account..." (*Id.* at 6-7, ¶ 24) Plaintiff reports she "learned it was possible the tenants had called the [water] District and pretended to be her to have the billing address changed." (*Id.* at 7, ¶ 25) She "contacted the Kern County Sheriff's Department about the incident and lodged a complaint that the tenants had potentially used her identity which would constitute identity theft and would be illegal conduct in having the water billing address changed at the Golden Hills Community Services District." (*Id.*, ¶ 26; *see also* Doc. 30-1 at 2) Plaintiff alleges that after the Sheriff's Department contacted the tenants, the tenants "filed another complaint with defendant BVCSD." (*Id.*, ¶ 28)

Plaintiff asserts that in June 2014, her therapist "took her off work" for severe work-related stress and anxiety. (Doc. 30 at 9, ¶ 31) She alleges the "stress prevented [her] from conducting her work duties as well as her ability to take care of her children." (*Id.*) On August 28, 2014, Plaintiff was told "an investigation was being conducted into allegations by her former tenants." (*Id.*, ¶ 30)

She alleges that in August, September, and October, her therapist notified the District that Plaintiff was to remain off work "until further notice." (Doc. 30 at 9, ¶ 31) In addition, Plaintiff

4

1  reports that during the summer, she had an MRI "which showed significant damage," and a "physician
2  indicated Plaintiff should remain off work until 11/26/14." (*Id.*, ¶ 32) Plaintiff's physician later
3  extended the time she "should remain off work until 1/20/15." (*Id.*)

4        According to Plaintiff, in September 2014, she "submitted paperwork to the California PERS
5  system, requesting that she be allowed to receive a disability retirement under applicable law, including
6  Cal. Govt Code 21151." (Doc. 30 at 9-10, ¶ 33)

7        In October 2014, she "was served with a Notice Of Proposed Termination by defendant
8  Edmonds, where Edmonds was recommending that Plaintiff's employment with BVCSD be
9  terminated." (Doc. 30 at 10, ¶ 33) The Notice indicated her termination was based, in part, upon the
10 complaints related to her tenants. (*Id.*) Plaintiff reports that Edmonds "requested to meet with Plaintiff,
11 however, Plaintiff was told by her therapist not to have any contact with the district as it was causing
12 great stress." (*Id.*, ¶ 36) Plaintiff alleges she submitted the notes from her therapist, but "the district
13 violated those medical restrictions and demanded that Plaintiff meet with Edmonds." (*Id.*) She asserts
14 that she "was required to respond to the alleged issues … [and] prepared a written rebuttal and
15 submitted it to the district." (*Id.*, ¶ 37)

16       Plaintiff reports that in January 2015, she was supposed to receive Personal Time Off, which
17 was not given. (Doc. 30 at 10, ¶ 38) The same month, "Plaintiff received notice that union coverage
18 had been changed and that coverage was terminated and she no longer had a union lawyer or
19 representative." (*Id.*, ¶ 39) She asserts this change "would have been pursuant to a union vote and
20 Plaintiff was excluded from any such vote." (*Id.*) On January 29, 2015, "Plaintiff received notice of
21 her termination from BVCSD from defendant Edmonds." (*Id.* at 11, ¶ 40)

22       On July 8, 2015, Plaintiff initiated this action by filing a complaint against Bear Valley
23 Community Services District and David Edmonds. (Doc. 1) Plaintiff alleges she "was never told
24 whether she qualified or did not qualify for disability retirement until on or about the last week of
25 September 2015 or the first week of October 2015." (Doc. 30 at 9, ¶ 41)

26       Based upon the foregoing facts, Plaintiff the following claims for relief in her Third Amended
27 Complaint: (1) a violation of her First Amendment rights by Edmonds; (2) retaliation in violation of
28 FEHA by the District; (3) retaliation in violation of Title VII by the District; (4) gender discrimination

in violation of FEHA by the District; (5) gender discrimination in violation of Title VII by the District; and (6) failure to conduct a hearing in violation of her Fourteenth Amendment due process rights, Cal. Gov't Code § 21156, and California's Administrative Procedures Act. (*See generally* Doc. 30 at 11-19)

Defendants filed the motion now pending before the Court on April 28, 2016, seeking dismissal of the first claim for relief. (Doc. 34) Plaintiff filed her opposition on May 11, 2016 (Doc. 35), to which Defendants filed a reply on May 19, 2016 (Doc. 17). The Court found the matter suitable for decision without oral arguments, and took the matter under submission pursuant to Local Rule 230(g).

## II.     Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). Further, allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the Court

"will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). Leave to amend should not be granted if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

### III.   Section 1983 Claims

Section 1983 "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). A person deprives another of a right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

### IV.   Discussion and Analysis

Plaintiff asserts Defendant Edmonds violated her rights by unlawfully retaliating against her for engaging in conduct protected by the First Amendment. (Doc. 30 at 11-12) "The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). The Supreme Court explained: "[P]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citations omitted). The Ninth Circuit set forth the five-step inquiry to determine whether a public employee's

First Amendment rights were violated:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).  Here, Plaintiff contends the police report she made involved a matter of public concern, and her police report is "a redress of grievances under the First Amendment."  (Doc. 35 at 2-4, 5)

### A.   Whether the Police Report involved a Matter of Public Concern

To state a cognizable claim for a violation of the First Amendment, a plaintiff bears the burden of showing the speech addressed a matter of public concern, and that her "constitutionally protected speech was a motivating factor in [the] adverse employment action."  *Eng*, 552 F.3d at 1070 (citing *Connick v. Myers*, 461 U.S. 138 (1983); *Marable v. Nitchman*, 511 F.3d 924, 930, 932-33 (9th Cir. 2007)).  According to Defendants, Plaintiff is unable "to establish that the Protected Speech constituted a matter of public concern."  (Doc. 34 at 5)  Defendants contend that the police report Plaintiff made does not involve a matter of public concern, it is not subject to First Amendment protection.  (*Id.* at 5-8)

Whether an employee's expression may be characterized as a matter of public concern "must be determined by the content, form and context of a given statement, as revealed by the whole record." *Rankin v. McPherson*, 483 U.S. 378, 384-85 (1987) (citation omitted).  "Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community."  *Eng*, 552 F.3d at 1071 (quoting *Johnson v. Multnomah County, Oregon*, 48 F.3d 420, 422 (9th Cir. 1995) (internal quotations omitted)).  Although this definition is broad, "there are limits."  *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009).  The Ninth Circuit explained: "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern."  *Id.* (quoting *Multnomah County*, 48 F.3d at 425).

In the Third Amended Complaint, Plaintiff alleged she "contacted the Kern County Sheriff's Department about the incident and lodged a complaint that the tenants had potentially used her identity which would constitute identity theft and would be illegal conduct in having the water billing address changed at the Golden Hills Community Services District." (Doc. 30 at 7, ¶ 26)  Opposing the motion to dismiss, Plaintiff argues the "reporting of criminal activity is a matter of public concern." (Doc. 35 at 1, citing *Ceballos v. Garcetti*, 361 F.3d 1168, 1176, 1177 (9th Cir. 2004), *rev'd on other grounds*, *Garcetti v. Cebalos*, 547 U.S. 410 (2006)).  In addition, Plaintiff observes that "in *Lott v. Andrews Center*, 259 F.Supp. 2d 564 (E.D. Tex. 2003), the court determined the filing of a police report was a public concern "because the public is always concerned in the apprehension and prosecution of criminal activity." (*Id.*, emphasis omitted)  Notably, however, *Lott* concerned an attempt by the plaintiff to report an assault by her former boyfriend and her attempts to do so being thwarted by the boyfriend's police officer friends.  Likewise, cases citing *Lott*, generally concern attempts to make complaints about police officers. *See e.g., Low v. City of Sacramento*, 2010 WL 3714993, at *5 (E.D. Cal. Sept. 17, 2010).

Notably, however, the Ninth Circuit has not determined a police report *always* involves a matter of public concern.  The Ninth Circuit explained issues of "public concern" include "matters relating to the functioning of government '[such as] misuse of public funds, wastefulness, and inefficiency in managing and operating government entities.'" *Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d 1121, 1130 (9th Cir. 2008), quoting *Multnomah County*, 48 F.3d at 425).  In addition, a "public concern" may be shown where a statement "helps the public evaluate the performance of public agencies," such as "speech alleging that the government engaged in discrimination or other civil rights violations." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103-04 (9th Cir. 2011) (citations omitted).  Thus, the filing of "a police report to complain about police misconduct" is a matter of public concern, and is constitutionally protected speech. *Doe v. County of San Mateo*, 2009 U.S. Dist. LEXIS 26084 at *17-18 (N.D. Cal. Mar. 19, 2009).  On the other hand, speech concerning "individual disputes and grievances and that would be of no relevance to the public's evaluation of the performance of government agencies, is generally not of public concern." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004) (citation omitted).

9

Likewise, the Eleventh Circuit concluded the filing of a police report is not automatically a matter of a public concern in *Morris v. Crow*, 142 F.3d 1379 (11th Cir. 1998).  In *Morris*, the plaintiff, a former employee of the Polk County Sherriff Department, asserted "he was fired because of his statements in an accident report and deposition testimony in connection with his investigation of a traffic accident involving a fellow deputy in which a citizen was killed." *Id.*, 142 F.3d at 1381.  The plaintiff asserted his accident report was protected under the First Amendment "because he 'reported on a co-employee's policy violations and negligence that jeopardized public safety and subjected his employer to substantial liability.'" *Id.*  The Eleventh Circuit observed:

> Police reports reflect information of general public interest and any information concerning police conduct and public safety could be considered to reach matters of public interest. The fact that such information may be of general interest to the public, however, does not alone make it of "public concern" for First Amendment purposes.

*Id.* at 1381-82 (citing *Connick*, 461 U.S. at 148 n. 8).  The court explained, "Not only must the speech be related to matters of public interest, but the purpose of the expression must be to present such issues as matters of 'public' concern." *Id.* at 1382.  Examining "the content, form, and context" of the report, the Eleventh Circuit concluded the report was not a matter of public concern, because the plaintiff's statements— given in the report and during a deposition—could "[]not be characterized as an attempt to make public comment on sheriff's office policies and procedures, the internal workings of the department, the quality of its employees or upon any issue at all." *Id.*

The Incident Investigation Report indicates that Plaintiff "reported the information of her water account… was tampered with and the bill delivery address was changed from a P.O. Box to the physical address." (Doc. 30-1 at 3)  Plaintiff told the police officer that "she did not make that change and did not authorize anyone else to," and she believed her tenants "may have impersonated her to accomplish such a change on the account." (*Id.*)  Thus, there is no indication that Plaintiff sought to expose fraud against the water district or stated in any way the agency was a victim of criminal conduct.  Rather, the report focuses on Plaintiff's belief that her tenants had potentially used her identity to change the account.  Such an issue is a private matter, concerning only Plaintiff and her tenants, and not a "matter of political, social, or other concern to the community." *See Eng*, 552 F.3d at 1071; *compare Doe*, 2009 U.S. Dist. LEXIS 26084 at *17-18 (finding "a police report to complain

about police misconduct" is a matter of public concern) *with Reynolds v. Stovall*, 2012 U.S. Dist. LEXIS 49963 at *28 (W.D. Ark. Apr. 10, 2012) (the filing of a police report was not a matter of public concern where it "occurred away from work, and the matter involved a personal, private relationship").

Though the police report may support an argument that the water company should implement protections to ensure that only the account holder may make changes to the account, this is not the same thing as Plaintiff making the report to bring to light the defective procedures maintained by the water agency. Thus, because Plaintiff identified only a private matter in her police report—the potential theft of her identity—she fails to identify a matter that would be relevant to "the public's evaluation of the performance of government agencies." *See Alpha Energy Savers,* 381 F.3d at 924. Consequently, Plaintiff fails to allege facts that support a conclusion that her speech was a matter of public concern.

### B. Petition for Redress of Grievances

Plaintiff asserts that making of a police report "is a petition for redress of grievances which is protected by the First Amendment." (Doc. 35 at 3, citing, e.g., *Doe v. County of San Mateo*, 2009 U.S. Dist. LEXIS 26084 (N.D. Cal. 2009); Mazzeo v. Gibbons, 2010 U.S. Dist. LEXIS 115044 (D. Nev. 2010); Lott v. Andrews Center, 259 F.Supp. 2d 564 (E.D. Tex. 2003)). Significantly, however, as Plaintiff acknowledges, to be protected under the First Amendment a petition for redress of grievances must also "involve matters of public concern." (*Id.* at 4, citing *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011)).

In *Guarnieri*, the Supreme Court held the "public concern" test applies to First Amendment retaliation claims brought by public employees against their employers under the Petition Clause of the First Amendment. In that case, a police chief filed a union grievance challenging his termination. After the police chief was reinstate with directives related to the performance of his duties, he filed a lawsuit pursuant to 42 U.S.C. § 1983, alleging his grievance was protected by the Petition Clause of the First Amendment, and that the directives issued upon his reinstatements were retaliation for that protected activity. The Supreme Court held that the public concern test applied to Guarnieri's claims, explaining: "The framework used to govern Speech Clause claims by public employees, when applied to the Petition Clause, will protect both the interests of the government and the First Amendment right. If a

public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." *Guarnieri*, 564 U.S. at 398; *see also Rendish v. City of Tacoma,* 123 F.3d 1216, 1221 (9th Cir. 1997) ("the threshold requirement demanded of a public employee's speech in order to receive constitutional protection from adverse employment actions — that it involve a matter of public concern — applies with equal force to a public employee's petition for redress of grievances").

As discussed above, Plaintiff fails to allege facts sufficient to support a conclusion that the content of her police report involved a matter of public concern.  Consequently, even if the report is considered a petition for redress of grievances, her speech is not entitled to the protections of the First Amendment.

### V.   Conclusion and Order

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss (Doc. 34) is **GRANTED**; and
2. Plaintiff's first cause of action is **DISMISSED without leave to amend**.

IT IS SO ORDERED.

Dated:   **June 12, 2016**               /s/ Jennifer L. Thurston
                                         UNITED STATES MAGISTRATE JUDGE