1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11  LAURA HUTCHINSON,                ) Case No.: 1:15-cv-01047 - JLT
                                     )
12            Plaintiff,             ) ORDER DENYING PLAINTIFF'S MOTION TO
                                     ) FILE A FOURTH AMENDED COMPLAINT
13      v.                           )
                                     ) (Doc. 40)
14  BEAR VALLEY COMMUNITY SERVICES   )
    DISTRICT and DAVID EDMONDS,      )
15                                   )
              Defendants.            )
16  _____)

17        Plaintiff seeks leave to file a fourth amended complaint to add a new claim for relief under

18  California Labor Code § 1102.5.  (Doc. 40)  Defendants Bear Valley Community Services District and

19  David Edmonds oppose the request.

20        For the following reasons, the Court finds the factors of Rule 15 of the Federal Rules of Civil

21  Procedure weigh against granting leave to amend, and Plaintiff's motion is **DENIED**.

22  **I.      Factual Allegations and Background**

23        Plaintiff alleges she began working as a police officer for the Bear Valley Police Department,

24  which is operated by the Bear Valley Community Services District, in August 2007. (Doc. 30 at 2, ¶¶

25  4, 8)  Plaintiff took pregnancy leave in 2008.  (*Id.* at 3, ¶ 9) When Plaintiff returned from leave, she

26  was not required to undergo field training.  (*Id.*)

27         According to Plaintiff, "she experienced discrimination on the job as well as retaliation," which

28  resulted in her "filing a lawsuit under FEHA in March 2012."  (Doc. 30 at 2, ¶ 8)  Plaintiff reports the

                                           1

1  lawsuit settled in October 2012.  (*Id.* at 3, ¶ 9).

2      Plaintiff alleges that she "was taken off work by her physician due to a high risk pregnancy" in

3  January 2013.  (Doc. 30 at 3, ¶ 10)  In April 2013, "Plaintiff filed a charge with the DFEH complaining

4  about discrimination and retaliation that are made unlawful by FEHA."  (*Id.*)

5      In September 2013, Plaintiff returned to work.  (Doc. 30 at 3, ¶ 12)  Plaintiff alleges that upon

6  her return, she "was forced to undergo remedial training (again) after her return from maternity leave."

7  (*Id.*)  Plaintiff asserts she "was the most senior patrol officer, but was then told the department no

8  longer recognized seniority."  (*Id.*).

9      According to Plaintiff, she was "the only female patrol officer," and the fact that the department

10  did not recognize her seniority "adversely affected [her] by disallowing her to bid for more favorable

11  shifts, which affected her ability to obtain reasonable child care."  (Doc. 30 at 3, ¶ 12)  She reports

12  Police Chief Walthers "told Plaintiff that her children do not qualify for 'hardships' which prevented

13  Plaintiff from qualifying for a more favorable day shift."  (*Id.*) In addition, Plaintiff contends the failure

14  to recognize her seniority adversely affected her training opportunities, vacation requests, and new

15  patrol car assignments.  (*Id.*)  Plaintiff alleges the "coveted positions were given to male officers and

16  [she] was refused the right to even test for such positions."  (*Id.*)

17      Plaintiff asserts that in September 2013, she "had a discussion with Senior [O]fficer Richey

18  about not being able to apply for promotions (detective and senior position) and she felt this was due to

19  gender discrimination."  (Doc. 30 at 4, ¶ 13)  Plaintiff reports she then "filled out and submitted an

20  application for an intermediate post certificate, which would provide a pay increase."  (*Id.,* ¶ 14)

21  However, the application, which included her college transcripts, "was never sent in by Chief Walthers,

22  which is a perfunctory step for Walthers to perform."  (*Id.*)  Plaintiff alleges Officer Richey told her

23  that "Chief Walthers 'did not agree' with her transcripts."  (*Id.*)  According to Plaintiff, "[a]t least one

24  male officer (Pierce) received an advance post without question by Chief Walthers."  (*Id.*)

25      Plaintiff alleges that in October 2013, she "passed remedial training and began patrolling on her

26  own."  (Doc. 30 at 4, ¶ 15)  However, "BVCSD altered shift schedules so that Plaintiff's shift involved

27  no 'double coverage' or backup for her," though all other officers had backup.  (*Id.*)  In addition,

28  Plaintiff reports her shift was at night, rather than the day as she was previously scheduled.  (*Id.*)  She

maintains that if "BVCSD recognized [her] seniority, she would have been given a more favorable daytime shift with backup." (*Id.*)

She alleges that in November 2013, she again had a discussion regarding gender discrimination with Officer Richey and the assistant manager for the district, Sandy Janzen. (Doc. 30 at 4, ¶ 13) Plaintiff alleges that "Janzen told [her] not to complaint about the district," and reported her complaints to Walthers. (*Id.*)

According to Plaintiff, in November 2013, she "was called into the office of defendant." (Doc. 30 at 4, ¶ 16) Sandy Janzen informed that Plaintiff she "had been recommended for termination and [instructed her to] not to ask for her annual evaluation." (*Id.*) Plaintiff alleges Janzen told her "it would not be a good evaluation because the chief (Walthers) did not want to give Plaintiff an evaluation at all, notwithstanding the positive daily evaluations she received in relation to her remedial training." (*Id.* at 4-5, ¶ 16)

"In December 2013, Plaintiff was told by third parties that a detective's wife had told them that Chief Walthers and senior officer Richey and detective Damon Pierce were going to 'get rid of Plaintiff' through psychological testing." (Doc. 30 at 5, ¶ 17) Plaintiff reports she "sent an email to Chief Walthers to let him know that she would be looking at other departments," and began to look for another position. (*Id.*) She asserts that after sending the email to Chief Walthers, she learned "the detective's wife had threatened to beat Plaintiff." (*Id.*) Plaintiff alleges she then "filed a written complaint with the district for gender discrimination, retaliation, hostile work environment, and violation of her police officer Bill of Rights." (*Id.*)

Plaintiff alleges that in January 2014, she "was supposed to get Personal Time Off (PTO time) and it was withheld." (Doc. 30 at 5, ¶ 18)

In April 2014, "Plaintiff suffered an injury to her back (on the job) and reported this to her supervisor." (Doc. 30 at 5, ¶ 19) She reports the "injury involved herniated disks in her back, which causes back pain, back spasms, numbness in Plaintiff's foot, compression on Plaintiff's nerve that causes sciatic pain, and weakness in her right leg." (*Id.*) According to Plaintiff, her injury "affected Plaintiff's walking and ability to perform her job and also take care of her children." (*Id.*)

Plaintiff alleges that in May 2014, she "was put on duty at the guard station next to the gate to

3

the community without her firearm and out of uniform."  (Doc. 30 at 6, ¶ 20)  Plaintiff asserts that her "change of job involved a civilian position where she would have not advancement opportunities within the police department and in fact was outside the police department where she worked."  (*Id.*)

She reports that on May 29, 2014, she "was served with a notice of investigation regarding alleged performance issues and allegedly falsifying documents."  (Doc. 30 at 6, ¶ 22)  In addition, she reports that she received a second notice of investigation in June 2014, which indicated "tenants who were renting property owned by Plaintiff … [reported that she] had used her position to intimidate the tenants."  (*Id.*, ¶ 23)

Plaintiff alleges she went to the house her tenants had been renting in June 2014, when she "discovered the water had been shut off, and there was approximately $200 of water bills owing for the property."  (Doc. 30 at 6, ¶ 24)  Plaintiff asserts she "assumed the tenants had established their own water account, but then learned that the bills were still in her name, and someone had changed the address on the account..."  (*Id.* at 6-7, ¶ 24)  Plaintiff reports she "learned it was possible the tenants had called the [water] District and pretended to be her to have the billing address changed."  (*Id.* at 7, ¶ 25)  She "contacted the Kern County Sheriff's Department about the incident and lodged a complaint that the tenants had potentially used her identity which would constitute identity theft and would be illegal conduct in having the water billing address changed at the Golden Hills Community Services District."  (*Id.*, ¶ 26; *see also* Doc. 30-1 at 2)  Plaintiff alleges that after the Sheriff's Department contacted the tenants, the tenants "filed another complaint with defendant BVCSD."  (*Id.*, ¶ 28)

Plaintiff asserts that in June 2014, her therapist "took her off work" for severe work-related stress and anxiety.  (Doc. 30 at 9, ¶ 31)  She alleges the "stress prevented [her] from conducting her work duties as well as her ability to take care of her children."  (*Id.*)  On August 28, 2014, Plaintiff was told "an investigation was being conducted into allegations by her former tenants."  (*Id.*, ¶ 30)

She alleges that in August, September, and October, her therapist notified the District that Plaintiff was to remain off work "until further notice."  (Doc. 30 at 9, ¶ 31)  In addition, Plaintiff reports that during the summer, she had an MRI "which showed significant damage," and a "physician indicated Plaintiff should remain off work until 11/26/14."  (*Id.*, ¶ 32)  Plaintiff's physician later extended the time she "should remain off work until 1/20/15."  (*Id.*)

According to Plaintiff, in September 2014, she "submitted paperwork to the California PERS system, requesting that she be allowed to receive a disability retirement under applicable law, including Cal. Govt Code 21151." (Doc. 30 at 9-10, ¶ 33)

In October 2014, she "was served with a Notice Of Proposed Termination by defendant Edmonds, where Edmonds was recommending that Plaintiff's employment with BVCSD be terminated." (Doc. 30 at 10, ¶ 33)  The Notice indicated her termination was based, in part, upon the complaints related to her tenants. (*Id.*)  Plaintiff reports that Edmonds "requested to meet with Plaintiff, however, Plaintiff was told by her therapist not to have any contact with the district as it was causing great stress." (*Id.*, ¶ 36)  Plaintiff alleges she submitted the notes from her therapist, but "the district violated those medical restrictions and demanded that Plaintiff meet with Edmonds." (*Id.*)  She asserts that she "was required to respond to the alleged issues … [and] prepared a written rebuttal and submitted it to the district." (*Id.*, ¶ 37)

Plaintiff reports that in January 2015, she was supposed to receive Personal Time Off, which was not given. (Doc. 30 at 10, ¶ 38)  The same month, "Plaintiff received notice that union coverage had been changed and that coverage was terminated and she no longer had a union lawyer or representative." (*Id.*, ¶ 39)  She asserts this change "would have been pursuant to a union vote and Plaintiff was excluded from any such vote." (*Id.*)  On January 29, 2015, "Plaintiff received notice of her termination from BVCSD from defendant Edmonds." (*Id.* at 11, ¶ 40)

In this action, Plaintiff filed a first amended complaint on October 13, 2015 (Doc. 7). Defendants filed a motion to dismiss (Doc. 9), which the Court granted in part on December 22, 2015 (Doc. 18).  Plaintiff filed a second amended complaint on January 20, 2016 (Doc. 23), to which Defendants again responded by filing a motion to dismiss (Doc. 23).  The Court granted the motion in part, after which Plaintiff filed her third amended complaint on April 1, 2016. (Doc. 30)  Defendants filed a third motion to dismiss certain of the claims for relief (Doc. 34), which the Court granted on June 13, 2016 (Doc. 39).

On July 17, 2016, Plaintiff filed the motion to amend now pending before the Court, seeking leave "to add a new claim for relief under California Labor Code 1102.5," which "mirrors the one recently dismissed against individual defendant Edmonds." (Doc. 40-1 at 2)

## II.      Legal Standards

Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within 21 days of service, or if the pleading is one to which a response is required, 21 days after service of a motion under Rule 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Because Defendant does not consent to the filing an amended complaint, Plaintiff seeks the leave of the Court.

Granting or denying leave to amend a complaint is in the discretion of the Court, *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  Consequently, the policy to grant leave to amend is applied with extreme liberality. *Id.* However, there is no abuse of discretion "in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally."  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

## III.     Discussion and Analysis

Evaluating a motion to amend, the Court may consider (1) whether the party has previously amended the pleading, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loehr v. Ventura County Comm. College Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984).

### A.      Prior amendments

The Court's discretion to deny an amendment is "particularly broad" where a party has previously amended the pleading.  *Allen*, 911 F.2d at 373.  Here, the amendment sought will be the fourth amendment to the pleadings.  Therefore, this factor weighs against amendment.

### B.      Undue delay

By itself, undue delay is insufficient to prevent the Court from granting leave to amend pleadings.  *Howey v. United States*, 481 F.2d 1187, 1191(9th Cir. 1973); *DCD Programs v. Leighton*,

6

833 F.2d 183, 186 (9th Cir. 1986).  However, in combination with other factors, delay may be sufficient to deny amendment. *See Hurn v. Ret. Fund Trust of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981).  Evaluating undue delay, the Court considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1387; *see also Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).  Also, the Court should examine whether "permitting an amendment would . . . produce an undue delay in the litigation." *Id.* at 1387.

Plaintiff seeks to add a claim for relief that "mirrors the one recently dismissed against individual defendant Edmonds," which was alleged in the third amended complaint.  (Doc. 40-1 at 2)  Thus, Plaintiff admits the facts were previously known when the third amended complaint was filed on April 2, 2016.  Significantly, the Ninth Circuit determined there is no abuse of discretion "in denying a motion to amend a complaint ... when the movant presented no new facts but only 'new theories' and 'provided no satisfactory explanation for his failure to fully develop his contentions originally. '" *Vincent v. Trend Western Technical Corp*., 828 F.2d 563, 570–71 (9th Cir.1987), *quoting Stein v. United Artists Corp*., 691 F.2d 885, 898 (9th Cir.1982).  Plaintiff does not deny that the facts were previously known to her but she fails to explain why she did not include a claim for relief under California Labor Code 1102.5 in one of her prior pleadings.  Consequently, this factor weighs against amendment.

C.     Bad faith

There is no evidence before the Court suggesting Plaintiff acted in bad faith in seeking amendment.  Therefore, this factor does not weigh against amendment.

D.     Futility of amendment

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin,* 59 F.3d at 845; *see also Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient"). Futility may be found where the proposed claims are duplicative of existing claims or patently frivolous, or both.  *See Bonin*, 59 F.3d at 846.

Defendants contend the proposed claim for a violation of Cal. Labor Code §1102.5 is futile.

(Doc. 41 at 2) Plaintiff does not specify in her proposed fourth amended complaint, which provision of Section 1102.5 she believes the District violated. However, because she asserts that she engaged in protected speech by reporting "criminal conduct to a law enforcement agency" (Doc. 40-2 at 20), it appears Plaintiff seeks to state a claim under Section 1102.5(b), which provides:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Cal. Labor Code § 1102.5(b).

As Defendants observe, like the cause of action the Court previously dismissed against Edmonds, the new claim is predicated "upon Plaintiff's report to the Kern County Sherriff's Office concerning potential identity theft caused by her former tenants related to their alleged alteration of the billing address for the previously leased residence's water bill." (Doc. 41 at 2) In addition, Defendants note "nothing in the proposed fourth amended complaint suggests that the Protected Speech reported any wrongdoing by the District, or that the tenants alleged to have committed said wrongdoing were either employees or contractors of the District." (*Id.*) According to Defendants, these omissions are fatal to the proposed claim, because "[t]he legislative intent of Labor Code Section 1102.5 is to encourage workers to report workplace violations or other violations of statute by their employer." (*Id.*, citing 2003 CA SB 0777, Section 1).

Plaintiff contends, correctly, that Section 1102.5 does not contain any express language limiting the application "to reports of unlawfulness concerning an employer's enterprise, operations or practices." (Doc. 42 at 2) Plaintiff argues, "[I]f the Legislature had intended to limit the reach of the statute to an employee's reporting of illegalities involving the activities of the employer's business, it would have included language to effectuate that intent." (*Id.* at 4) For example, Plaintiff notes the Legislature limited application of the California Whistleblower Protection Act, which applies to employees of the state, to only reports of "[i]mproper governmental activity" and "reports of a

condition that may significantly threaten the health or safety of employees or the public. (*Id.* at 3, quoting Cal. Govt't Code § 8457.2)  Further, Plaintiff observes that the statute has been construed to include reports of unlawful conduct by fellow employees.  (*Id.* at 5, citing *McVeigh v. Recology San Francisco*, 2013 Cal.App.4th 443, 470 (2013). Accordingly, Plaintiff argues California courts have rejected Defendants' position that Section 1102.5 is limited to reports about an employer by its contractors.  (*Id.* at 5-7)

However, California courts have repeatedly identified Section 1102.5 as a "whistleblower" statute, intended to codify public policy providing an employer from taking retaliatory actions for reports made about the workplace.  *See, e.g., Carter v. Escondido Union High School Dist.,* 148 Cal. App. 4th 922, 933 (2007) (identifying the provision as "California's general whistleblower statute"); *Garcia v. Rockwell Int'l Corp.*, 187 Cal.App.3d 1156, 1561 (Cal. App. 4th Dist. 1986) explaining "the Labor Code section merely enunciated already existing public policy," which "forbids retaliatory action taken by an employer against an employee who discloses information regarding an employer's violation of law to a government agency"); *Collier v. Superior Court of County of Los Angeles*, 228 Cal.App.3d 1117, 1123 (Cal. App. 2d. Dist.1991) *review denied*, 1991 Cal LEXIS 3035 (finding Section 1102.5(b) "reflects the broad public policy interest in encouraging workplace 'whistleblowers,' who may without fear of retaliation report concerns regarding an employer's illegal conduct").   In particular, in <u>Green v. Ralee Eng'g Co.</u>, 19 Cal.4th 66, 76–77 (1998), the California Supreme Court held,

> In 1984, our Legislature provided "whistleblower" protection in section 1102.5, subdivision (b), stating that an employer may not retaliate against an employee for disclosing a violation of state or federal regulation to a governmental or law enforcement agency. This provision reflects the broad public policy interest in encouraging workplace whistle blowers to report unlawful acts without fearing retaliation. Section 1102.5, subdivision (b), concerns employees who report to public agencies. It does not protect plaintiff, who reported his suspicions directly to his employer. **Nonetheless, it does show the Legislature's interest in encouraging employees to report workplace activity that may violate important public policies that the Legislature has stated.** The state's whistle blower statute includes administrative regulations as a policy source for reporting an employer's wrongful acts and grants employees protection against retaliatory termination. **Thus, our Legislature believes that fundamental public policies embodied in regulations are sufficiently important to justify encouraging employees to challenge employers who ignore those policies.**

Emphasis added.  Likewise, this Court has held, "Labor Code § 1102.5 is a "whistleblower" statute."

*Robles v. Agreserves, Inc.*, 158 F.Supp.3d 952 at *34 (E.D. Cal. 2016).

Indeed, the other provisions of Section 1102.5 indicate that the Section is intended to govern workplace activities, by prohibiting employers from making rules that prevent employees from disclosing information to government or law enforcement agencies, and from retaliating "against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."  Cal. Labor Code §1102.5(a), (c).  Likewise, though the statute does not prohibit the interpretation offered by the plaintiff, the language gives rise to an inference that the Legislature intended to address workplace issues only.  For example, the statute prohibits retaliation against an employee who makes a report to "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance."  The Court reads this to expand, not the *types* of complaints that are protected but to whom complaint of illegal workplace conduct may be reported.

Significantly, Plaintiff has not identified any case in which the Court determined that Section 1102.5(b) applied to reports other than those relating to the workplace and the Court has located none. Notably, the rationale relied upon by the plaintiff, taken from the depublished opinion, *Cardenas v. M. Fanaian, D.D.S., Inc.*, 240 Cal. App. 4th 1167 (Cal. App. 5th Dist. 2015), related to a police report made by an employee asserting unlawful conduct by a coworker.  In holding that section 1102.5(b) applies to this type of complaint, the court relied upon *McVeigh v. Recology San Francisco*, 2013 Cal.App.4th 443, 470 (2013).  Notably, *McVeigh* also involved a claim of coworker wrongdoing. *McVeigh* held, "Labor Code section 1102.5, subdivision (b) should be given a broad construction commensurate with its broad purpose [Citation]. We conclude, consistent with the statute's application in the *Gardenhire* case, that Labor Code section 1102.5, subdivision (b) protects employee reports of unlawful activity by third parties such as contractors and employees, as well unlawful activity by an employer. In support of our conclusion, we note that an employer may have a financial motive to suppress reports of illegal conduct by employees and contractors that reflect poorly on that employer." *McVeigh* at 471.

The Court has no quarrel either with the rationale of either *Cardenas* or *McVeigh,* which

expand the protected conduct to that which has a *connection* to the workplace, even though it does not involve the employer's criminal activity.  However, the facts of this case diverge significantly from either of these such that the Court cannot read them to apply in this situation.  Therefore, the Court concludes that because Plaintiff's report to the police did not include a report of illegal activity arising from her workplace, concerning her workplace or any of those who worked there, the statement is not entitled to the protections of Section 1102.5(b).  Thus, Plaintiff's proposed claim is futile.

**IV.     Conclusion and Order**

Plaintiff previously filed several amended pleadings in this action and the proposed fourth amended complaint presents no new facts.  Rather, Plaintiff seeks only to add a new claim, based upon the same facts and fails to provide an explanation for her failure to fully develop this contention in a prior pleading.  For this reason alone, it is appropriate for the Court to deny leave to amend. *See Vincent*, 828 F.2d at 570-71; *Bonin*, 59 F.3d at 845.  Further, the proposed amended claim is futile, which weighs against granting leave to amend. *See Miller*, 845 F.2d 209.  Accordingly, the Court finds leave to amend is not appropriate under Rule 15 of the Federal Rules of Civil Procedure.

Based upon the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's motion to amend (Doc. 40) is **DENIED**.


IT IS SO ORDERED.

Dated:   **August 18, 2016**                          **/s/ Jennifer L. Thurston**
                                                                       UNITED STATES MAGISTRATE JUDGE

11